Our final case for this morning is United States v. Mobley. Ms. Christensen. May it please the Court, Counsel. Good morning, Your Honors. My name is Joanna Christensen and I represent Mr. Mobley in this appeal. This is the second time Mr. Mobley's case has come before this Court. The first time it was a joint motion for remand that this Court granted, saying that the sentence was vacated and the case should be remanded for resentencing in light of United States v. Thompson. Even though every court, district court, and this Court that's considered the Thompson remand issue has done a full resentencing, the district court refused to do such a resentencing in this case. So Ms. Christensen, I can't disagree with you that a lot of remarks that the district judge made reflected, I have to say, annoyance at the thought that the whole thing was going to have to be done again. But the other thing the district court does over and over again is say, this was the sentence I wanted. Let's put the clerical error to one side. This was the sentence I wanted. I'm not changing my mind. I'm not changing my mind ever, ever, ever, no matter what you say. And on and on she went. So do we actually have any doubt that if a proper Thompson remand had taken place, she would have done anything different, namely reaffirm the term of years and fix what she thought needed fixing in the supervised release conditions? I certainly think there's a possibility. I mean, she was from the get-go focused that she was not going to reconsider his sentence. And that's understandable given the posture at which his case came before her the first time. He was a very difficult defendant, long criminal history. He misbehaved on bond, and she obviously remembered that. But what was pertinent here that he was trying to say, and she prevented him from, is that in the year between the two sentencings, he had done significant work in prison. He got his GED, which is not easy to do when you're in prison, particularly since he was a USP. And he had taken classes to further... We hadn't said in our case that you have to change your condition of supervised release in a particular way. You have to think about it more. You have to consider whether it's the interaction with the prison sentence in light of what the court of appeals said. But isn't it possible for a judge to say, as he did repeatedly, you know, I've listened to you and so on and read the Thompson case and so on. I just don't see any reason to change what I said the first time. I think if the judge had said what you just said, Your Honor... Well, he did say it in effect. No, I think she didn't. She didn't, for one thing, say that she had considered what he was raising. She said she wasn't going to. She didn't say that she had read Thompson. I think that we hopefully can assume that she had read Thompson. But any court who had been dealing with these issues would know that Thompson... What she said, as in one example, well, I gave it a lot of thought at the time, and I imposed a sentence that I thought in this case for this person was appropriate. I really don't have anything more to say about it. I think the key in there is at the time. And then she says, and I really wasn't intending to go over that again. Right. But I do have one other point for you, I mean, with these Thompson complete resent... you know, vacating the sentence, full resentencing. Actually, I have a couple points. One is that I at least, maybe I'm a class of one here, but I haven't thought that meant that the actual evidence needed to be retaken. I've thought that that meant that new evidence could be brought in and additional argument could be made, but the district judge didn't have to drag in the victims again, drag in, you know, everybody. Could rely on the records. So that's one point. A second point that she seems to be influenced by is that Mr. Mobley didn't file any kind of sentencing memorandum before this additional proceeding. And so it wasn't at all clear to her that he was asking for a plenary resentencing and that he, you know, had these additional points, whether it was the GED. The lawyer kind of slips them in, in the interstices there. But of what importance is the lack of a sentencing memorandum? I think it's of minimal importance. I think better practice would have been to file a sentencing memorandum. You know, obviously I know things I was not trial counsel. I was appellate counsel last time. I know things that aren't in the record about why one wasn't filed, but it's not necessary. And it's not certainly not required to file a sentencing memorandum prior to sentencing. There are many attorneys who don't do that and rely on oral arguments for whatever reason. Maybe their oral arguments are better than their written arguments. And I do think that one thing that Thompson really changed about our way of seeing sentencing is not two components, not imprisonment over here, supervised release over here, that they do interrelate. And the judge said, well, wait a minute, didn't I impose the maximum term of supervised release this time? And I think if the judge had thought a little further about that, maybe perhaps said maximum term of supervised release, maybe he doesn't need the high end of the guidelines, particularly since the year he's been in prison, he's shown an ability to start his rehabilitation. I will agree with you about taking evidence on the guidelines. Taking evidence on the guidelines, the victims, and I'm not sure the victims came in the first time around, but I understand your point. That's what we would call more law of the case than the 3553A factors. And I think what Mr. Mobley really wanted to argue and what he tried to assert, he did talk about loss in his criminal history, but more was a 3553A factor that he was perhaps artfully asserting because he was a defendant, not a lawyer. So I do believe that had the judge been open to this remand for the 3553A factors to be considered, not only for supervised release but also for how those terms and conditions relate to Mr. Mobley's sentence, I believe that she could have changed her mind. Now, granted, at this point... And you agree that she didn't have to. I mean, at the end of the day, if she had listened with an open mind to these things, she could have said, I still think, whatever it was, 161 months is right. If she had said, I've considered your arguments. I have the discretion to give you a different sentence. I'm choosing not to. We wouldn't be here. That would be an exercise of discretion. But when he, for example, when his lawyer said, Mr. Mobley has, since his incarceration in Leavenworth, has received his GED, et cetera, et cetera, et cetera, the judge was listening to that, right? She was obviously listening. She was there, so I'm assuming she was listening. It was after that that she said, you know, I gave it a lot of thought at the time, and I really don't have anything more to say about it. Doesn't that mean what she's saying is, yeah, I heard what you say about the GED and everything, but I'm not impressed. I think she qualified by saying, I did it at the time, and I'm not going to consider what you're saying now. No, no, no. She didn't say she's not listening. She's not buying. That's a different thing. She said that she was not going to reconsider his sentence. Yes, of course, because she's just listened to what he wants, why he wants the reconsideration with the GED. She says, I'm not going to reconsider your sentence. In other words, I'm not going to redo your sentence. She's listened. She's not saying, I put plugs in my ear. I think she started out the hearing that way. So I think that that was the tone of the hearing as it started, and I think that's the way it finished as well, when she said she didn't have to and the court of appeals said she didn't have to and she wasn't going to. Now, do you agree with the government that we should review only for plain error the failure to provide a real opportunity for allocution because no objection was made below? I don't agree. I think that the attorney certainly didn't make an objection, but Mr. Mobley said that he did want to talk and he did have something to say and she cut him off. He did talk. He did talk, but he said he didn't understand why he wasn't getting a full resentencing and why she wasn't considering anything, but he wasn't allowed to talk at all. What is your conception of the full resentencing? I think it's certainly something that is the reconsideration of the 3553A factors from Thompson, and I don't think Thompson meant to wipe the slate clean. What specific supervised release condition was he challenging in this? He didn't challenge on the appeal? I don't understand. Is the judge supposed to reconsider all the conditions without hearing anything from the defendant, or is she required to say, well, you have to tell me what you think of these conditions? Well, I think she does have to consider what the defendant has to say regarding the condition. She has to extract words from him. He had a chance to say whatever he wanted to say, right? And he had a lawyer to speak in front of him. That was only after the sentence was pronounced, though, right? He talks after the sentence. He talks after, but he had the lawyer before, right? He did. So she heard everything the lawyer said, and she wasn't persuaded. Right. What more is necessary? She pronounced sentence before giving Mr. Mobley a chance to talk, certainly about the 3553A factors and the conditions of supervised release. Well, and your point is that the statute requires an opportunity for allocution on resentencing. It actually specifically says that. Exactly. I see that I'm out of time. Thank you very much. Thank you very much. Mr. Vandenberg. May it please the Court. Case Vandenberg on behalf of the United States. Your Honors, the District Court complied with this Court's remand for resentencing in light of Thompson. I'm not sure that she did. Whether it matters may be another question. But I find it very difficult to read this transcript as anything but her understanding that the argument on the first appeal dealt with supervised release, that the remand dealt with supervised release. She opens up by saying, good morning, okay, so which parts of supervised release do you disagree with? Defense counsel says, this is a new sentencing hearing. We can make arguments about the sentence. And she pretty much says, no, you can't. And I think actually to give her the benefit of the doubt, this was a moving target at the time. There were a lot of supervised release cases coming out, and I don't think she appreciated that the sentence itself was vacated. There was no sentence on the record. It wasn't a limited remand just to fiddle around with the supervised release conditions. And it may seem to be splitting hairs, but if she had said something like, I realize that the sentence is open for discussion again, I'll listen to you, I'll listen to you, but frankly I haven't heard anything that's made me change my mind, I suspect that's actually what she would have said. But we don't have any hint from her that she's actually under some legal obligation to reconsider the incarceration part of the sentence. Well, Your Honor, I agree that the sentence was vacated, and the government did actually raise the point that Thompson did leave the door open to consider other parts of the sentence. I think it's a question between what's required by Thompson and what's allowed by Thompson at the district court. I understand that, but she has, just as with the sentencing guidelines, we reversed any number of cases once the sentencing guidelines became discretionary, where the district judge still acted or said things that made us think that they hadn't absorbed that lesson yet. And after the government correctly says that Thompson left open the new thing, she moves ahead and just focuses on supervised release, doesn't want to hear anything, calls it an end run around her sentence as though something illegitimate is happening. It is not a sentencing transcript that gives me the sense that she recognized the discretion she had and elected not to exercise it, which would have been fine. I understand that, Your Honor. When the government points out that Thompson does open the door, she does respond, well, that's my understanding. She then does elect to only focus on the immediately in the transcript, her immediate response after the government goes through the fact. Well, you say, and the government just views this as somebody complying with Thompson's requirement that there be some statement on the record linking the terms of supervised release, which are going to be largely consistent, but linking to what? I mean, this is an incomplete sentence. You're saying nothing's changed for imprisonment, and you're focusing on supervised release. So when she says, well, that's my understanding, she's talking about supervised release right there. She's not talking about incarceration. Your Honor, just in context, in terms of the incomplete sentence, it does say that the record linking the terms of supervised release, if you continue, to the 3553 factors. But not to the sentence of incarceration. Maybe our court has been crazy, but our idea has been that there is some substitution effect between terms of incarceration and terms of supervised release. Maybe that's not the case in many instances. And she, as I say, no one here disagrees with the proposition that she was absolutely entitled, if she thought that the correct incarceration term was the same, to reimpose it, as long as she did it understanding that it was really a full remand, and she needed to give people a chance other than just sort of slip in on the side these points. She tells the defense lawyers, absolutely nothing you can say that's going to make me change my mind. I'm not prepared to go over that again. And, Your Honor, in the context here, it was a situation where the court had stated in its remand order that the only thing that the defendant was contesting were the terms of supervised release. The remand order said the sentence is vacated, it's remanded in accordance with Thompson. And that would certainly allow the district court to go into other aspects of the sentence at its discretion, such as the term of imprisonment. And if she had given the slightest hint that that's what she was doing, maybe we wouldn't even be here. Well, Your Honor. And, Mr. Vandenberg, there's one other thing. In the brief, you stated that allocution generally is required during a resentencing after a judgment has been vacated. But it's unclear as to whether that is so, the opportunity for allocution being required in a resentencing in light of Thompson. And what I've been wondering is why should a resentencing in light of Thompson be treated differently? And, of course, what I wonder is, is there any case support for such a statement? Well, Your Honor, I think it's unclear as to whether it should be treated differently, and that's just because the cases are not clear in this context. What's unclear? If the sentence has been vacated, there's no sentence, right? Yes. So doesn't that mean that it's now a resentencing proceeding? Well, as Your Honor said, I think this was a moving target at the time. And you see in the transcript that the district court does ask, do I need to give you another opportunity to say something? And defense counsel responds somewhat convoluted, but eventually responds, no, I don't believe, which the district court could reasonably interpret as either there being no procedural need in this context or that there is no interest in delivering an allocution. But the Supreme Court's made it very clear that allocution is a personal right. It's not something that the lawyer does for the defendant. Yes, Your Honor. And the question here is just whether or not the district court plainly erred in failing to offer that. And I think the lack of clarity at this time is why there is not plain error. So how many plain error cases have you found where allocution was denied? Can you cite me a case where allocution was not given and we didn't say that was a structural error that required reversal? I do not have a case before me, Your Honor. No. Let me speak on the issue of mitigating evidence. The defendant alleges that he was barred from presenting mitigating evidence during resentencing. The defendant did, in fact, present the mitigating evidence, which in this case was the accomplishment of receiving a GED and completing numerous courses. This was before the court at the time. There was a no point where the court said that they would not consider mitigating evidence. If there was any request for mitigating evidence, the court never said, no, you can't present that. The district court was, of course, entitled to give little or no weight to that mitigating evidence. And here you have a situation where the district court considered that evidence and found that no evidence presented indicated that the district court should revisit the defendant's term of imprisonment. And Judge Posner, you stated one of the areas where the district court said that. There's another area where the district court says I have, and this is after that mitigating evidence regarding the GED and the completed classes was presented. The district court says, and I have no reason to think that I didn't impose the correct sentence, which was certainly imposed only after I gave it a lot of consideration and several hearings. Another section where she says nothing has been presented to me today to indicate that the court should revisit the term of imprisonment. Your Honor, if there are no further questions, we would respectfully ask that the court correct the district court's clerical sentencing error here and affirm the sentence in all other respects. All right, thank you very much. Anything further, Ms. Christensen? I don't know if you ran out of time. You can still have a minute. I'll make a couple notes. The court asked about plain error and elocution. The Lupke case, which the government cited in its brief, was plain error review, but then vacated because the district court denied elocution. And that was the case where this court determined that Rule 52 applies to elocution issues. I will say that Kappas was decided in April, two months prior to Mr. Mobley's resentencing hearing, and made it very clear what Thompson meant when it said a complete resentencing, and it interpreted Thompson as a complete resentencing. And I think just as an aside, this court went through the Palladino remands in 2005, and they were different. Why do you say she denied elocution? She said, are there any of those points made by the government or by her that you disagree with? And then he gets to say them, and she says, well, those are issues you could have raised on appeal and then chose not to. That was the last page of the sentencing transcript after the district court judge had pronounced sentence. And in Griffin, this court said that that was not an appropriate time. She wouldn't allow him to talk if she had definitively imposed sentence. She's obviously giving him a chance, not that it's a good chance, that he can talk her out of a sentence. I think if it was a chance, it was the worst chance possible. Pardon? If it was a chance for him to talk her out of it, it was the worst chance possible for Mr. Mobley. Why was it the worst chance? She had already made her decision. She started out the hearing. She made clear from the outset she was unsympathetic to him. And he was not helped by not having filed a sentencing memo, even though he had a lawyer. When did the lawyer file a sentencing memo? He chose not to. I don't know. Well, you can see how it would irritate the judge. Not even a sentencing memo, and yet they want me to reconsider the sentence. I certainly think that defense counsel is entitled to believe that the court was going to follow this court's mandate and give a full resentencing hearing, as in Thompson. What would that mean? It means allowing him to present and argue evidence. Mr. Mobley gets a chance to do that. Well, the lawyer was there to present the arguments. And the district court judge shot him down when he tried. Well, he didn't have a chance to development. It's like he gives the Roman numeral headings, but he doesn't have any chance to say what classes he was taking, what they were about, why. Exactly. Well, why didn't he say that? I think he was dealing with a judge who was not going to listen to him. The judge didn't tell him to shut up. I think the judge did all but. Oh, come on. He could have simply said, you know, Judge, there's some more points I'd like to raise. I think he could have, but the judge made it clear she wasn't going to consider them. The judge showed she was impatient and unsympathetic. She didn't try to cut anybody off. I would have to disagree with you. Well, where do you think she cuts someone off? I think she says, I'm not going to consider it. There's nothing you can say to make me reconsider my sentence. I think that's cutting defense counsel off. So I do see my time is up. And I thank the court and ask the court to reverse and remand. Thank you. All right. Thank you very much. Thanks to the government as well. We'll take the case under advisement.